The first argued case this morning is No. 14-5135 Normandy Apartments, Limited v. United States. Mr. Hoffman. May it please the Court, Your Honor, Terry McHoover for Normandy Apartments Appellant. In 2004, when Normandy executed the HAP renewal agreement with, for the first time, a HUD contractor, in this case Oklahoma Housing Finance Authority, OFHA for short, the contract renewed previous provisions of the contracts, the previous HUD contracts signed between Normandy and HUD. The only change was that OFHA was substituted as a contract administrator, that OFHA would relay payments to Normandy. HUD was not a signatory to the OFHA agreement, correct? Correct, Your Honor. In fact, it doesn't even mention HUD. When, I want to understand, when you say it doesn't mention HUD, are you saying it's a party? Yeah, it's a party. Well, I think the contract lays out that HUD remains a party to provisions that pertain to it. And I know in the lower courts, we had argued a little bit about that language, where it says that there's an assignment during the term of the contract that HUD nevertheless remains a party to the provisions that pertain to HUD. And we would contend that the, although that language, there's the intent to remain, we also have policy guidance from HUD that says even if they don't execute a renewal agreement that they intend to be bound by that agreement to the provisions that pertain to it. Your problem is whether HUD is privity to the OFHA agreement. Right. That's really your, the issue. Do we have privity with HUD? You know, I think it goes a little bit further than just that particular agreement because I still think that the previous agreements with HUD were still in effect. The provisions that renewed the previous HAP agreements pertain to HUD and as it relates to both enforcement, enforcement in default proceedings, enforcement of contractual remedies. And so those provisions were renewed because there were no changes in the renewal to those provisions. It says that all of the previous provisions of the HAP contracts were renewed except for specific changes. In this case, the OFHA. You have a series of HAP agreements and then a time comes when you're not entering into a HAP agreement anymore. Now you're entering into a HAP renewal agreement which changed and superseded the HAP agreements. Then you had the other agreement that came along after that. Your Honor, if you trace back through all of those agreements, particularly the HAP renewal, even the very first one says that it renews the provisions of the expiring HAP contract. And then if you trace through the, I think there was a series in 2000 and then there was, and it was renewed I think each year. I mean, it was an automatic renewal. And then in 2004, there was a five-year contract term. But in each one of those, it renewed the existing HAP contracts, the provisions of the existing HAP contracts except for the specific things that are modified. And in 2004, the only things, the things that would be modified through these agreements were the contract price, the rental price, and the amount of the reserve account that HAP set aside. There were certain logistical things that were modified each contract term. But the other provisions were renewed. There was never a non-renewal of the terms even in the original HAP contracts. And again, those are, our allegations allege the HED reached those HAP agreements along with regulations pertaining to events of default when HED finds a property that's not in safe or sanitary condition. There's a certain set of steps that were supposed to be taken, and we've alleged that they weren't. So for the argument, while we argue that there's privity in the 2004 agreement, we argue that there's privity in the previous agreements and the provisions that were renewed by the 2004 agreement. I don't see any doubt about there being privity in the HAP agreements or the HAP renewal. But then when you get into the agreement after that, HUD's not a signatory to it. Right, Your Honor. But again, and I'd point again to the policy guidance that HUD issued. At the lower court, we had attached, and I see that it's not in our appendix. It seems to be missing. One of the exhibits is missing. The policy guidance from the Secretary was that, and I think we quoted the language, and it said, when a renewal contract is executed by a PHA pursuant to this guidebook in accordance with HUD requirements and on the form prescribed by HUD, HUD is contractually bound by the renewal contract provisions that specify HUD's role pursuant to the renewal contract, including provisions concerning any applicable HUD requirements, statutory changes, distributions, and PHA default. So with that language from the policy guidance from the Secretary, I think there's evidence that HUD intended to be bound by the renewal agreement for the provisions that pertain to it. And that would be the renewed provisions dating back to the original HAP agreements in the 90s. You're not arguing that those, that policy handbook was incorporated somehow into? No, and I didn't mean to cut you off. But no, the argument is that, you know, and we made this, we made a couple of arguments about privity. And even if you looked at it as an implied in fact, we pointed to Herman Ransom, who was the HUD director for Kansas City that supervised Oklahoma, his affidavit wherein he said that there was a contract between the parties, and HUD was approving to that in 2004. I looked at that, I looked at that declaration, and I just don't see that it says what you say it says. I don't, I don't see that in the declaration that the HUD administrator has, is assuming liability or is making HUD a party to the contract. Well, what he says to the court, to that court, is that the, it says in paragraph 4, and it's page 243 of the appendix, he says the owner also agreed pursuant to a TAP contract with HUD. So he's saying that HUD is a party to that contract. And he's referring specifically to the 2004 renewal agreement. Do you disagree that where there's an express contract, it excludes an implied in fact contract? Yes, and it's simply a counter argument that if you don't find an express contract, we think there's an express contract and you don't have to go that far. So you do agree that where there's an express contract, it precludes the existence of an implied in fact contract? And I want to make sure I understand your question. Are you saying an express contract between HUD and Normandy or between OFA and Normandy? What I'm saying is that where you have an express contract, it excludes the existence of an implied in fact contract. Well, why do you think? Because it covers the same, an express contract covering the same subject matter. Right, Your Honor. And the, my argument is that, and the implied in fact is simply an argument that if there was no finding of an express contract because HUD was not a signatory to the 2004 renewal, then you can find... But there is an express contract covering the apartments, that issue. Right. With the state. As I understand that, but we're talking about a contract between HUD and Normandy. Why didn't you ever argue a third party beneficiary type theory? The... See, there's an injustice here, right? You've lost some money. Right. Normandy has a liability on its hand because of what transpired. And the way things have shaped out, it seems like you have nowhere to turn. And you're left holding the bag. And that's a problem. But under what you pled and what you bring to us, your appeal, I just, I'm left thinking about why didn't you pursue other theories, especially a third party beneficiary to the agreement between Oklahoma and HUD? The... We... And I'll tell you, when we first went into this, we were expecting to be able to stand on our own contractual relationship and not... You know, we've always thought all along that we were the... We had a contractual privity with HUD and it wasn't necessary to go that far. And I understand, as I understand it, the way that these payments work is that there's a contract between HUD and the NSEOFA that covers a multitude of parties. And I could see where we could all be beneficiaries of that contract. But I'm not so certain that a court wouldn't find that it's really the tenants that are the beneficiaries of that contract, and that they were made for the benefit of the low-income tenants and not necessarily for the project owners. It just happened to be a conduit. And we... The court's right. We pursued a state action against the contract administrator, and the state court said, you know, the necessary party here is HUD. You have an indispensable party, so I'm going to dismiss. But we can't bring HUD into the state court. So that was... To be frank with the court, we thought that we had sufficient evidence of privity aside from a beneficiary argument. Let me ask you a factual question. Okay. One of the things that disturbs me is that it looked like your client was trying, in pretty good faith, to improve the property by replacing windows with better insulating, higher-quality windows, and that the default identified was it hadn't been completed. What was the problem with that? How long did that take? Was it overly... It took longer than expected. And there were some issues with the weather and some issues with the contractor, and that was one of the issues that Normandy tried to appeal through the REACT inspection system, and then kind of got a cold shoulder. But there was a contract, and they were trying to provide... There was a contract under for those windows to be repaired. And as we read the regulations, those should not have been counted off, which sent the score to the level that it did, which provoked all of this. But was the default that it hadn't been completed or the appearance of the property while the construction was ongoing? Well, Your Honor, they marked off for the windows. There was a score sheet. That wasn't the only problem. The windows weren't the only problem. There were other issues too, but there's a multi-part checklist that I think has included the impendence, that particular one. But the windows were a big part of that score that led to the failing score. But it was... But the windows were marked off along with other things. Okay. Let's hear from the government. We'll save you rebuttal time. Okay. Ms. Chanton. Thank you, Your Honor. May it please the Court. The trial court correctly concluded that Normandy is not privity with the United States with regard to the contract that the complaint alleged was breached, the 2004 HAP renewal contract. That contract was entered into by Normandy and the Oklahoma Housing and Finance Authority, not HUD. Ms. Chanton, perhaps you're going to ask the same question. Why hasn't the government stopped from arguing that this is not a contract issue? It's having moved the case to the Court of Federal Claims on this premise. How can you now argue that that was incorrect? Isn't there an obligation of the government to find the correct law and rely on it? First, Your Honor, the government didn't move the case to the Court of Federal Claims. The plaintiff, after filing its complaint for an injunctive relief in the Western District of Oklahoma, ended up at the Tenth Circuit, where the Tenth Circuit informed it it could pursue an APA claim in the district court or it could pursue a breach of contract claim based upon its contractual claim, a claim for a breach of contract in its complaint. The plaintiff, as it explains in its reply brief, chose not to move forward with its APA claim in the district court and chose to instead file a complaint in the Court of Federal Claims. The government had informed the Tenth Circuit of this court's decision unpublished in Senate Manner v. United States. Unpublished means non-presidential? Yes. You can't rely on it? Are you telling us that that was the basis? Yes, Your Honor. The court's reasoning was first down. But how can that be the basis when there's a caption which says not citable as precedent? Your Honor, the government believes that the court's reasoning bound the government to consider the contract, the fact that HUD was not a party to the contract. The terms of the contract were clear. There's no ambiguity, and Normandy is not alleged to be ambiguity. In fact, the court's Senate Manner decision cited the court's precedential decisions in Katz v. Cisneros and other decisions such as National Leased Housing Corporation v. United States. Those decisions, which are presidential, found that it's been settled for some time that funding and supervision of projects that receive HUD funding and are under the Section 8 program do not create an express or implied contract. Is the government's position that this plaintiff now should be returned to the district court in Oklahoma? No, Your Honor. The plaintiff has stated, I believe in its reply brief, that it would no longer pursue an APA claim. And the court, as we noted, the standard review is abuse of discretion on the application of judicial estoppel. Here, we believe the trial court did not abuse its discretion. First of all, Estoppel against the government? Yes, Your Honor. The judicial estoppel is not properly applicable to jurisdictional questions because the court must consider its jurisdiction. What about estoppel, assuming, let's say I agree with you that the government can't be estopped from asserting lack of jurisdiction. But what about estoppel in preventing the government from changing a litigation position? And that litigation position before the district court is that you can't sue me here. You have a breach of contract claim, and you can only sue me for breach of contract at the Court of Federal Claims. That, coupled with the fact that you argued in Senate manner that you were a party to the contract under an identical contract, there you argued that you were a party. The case is transferred to the Court of Federal Claims, and there, suddenly, you argue you can't sue me here. This is, I'm not a party to the contract. Your Honor, we don't believe that it's a change in a litigating position to point out a lack of jurisdiction. And, in fact, the – Not a lack of jurisdiction. It's a change in litigation position that you don't have a contract. Below you argue there's a contract. You're going to argue breach of contract. You can only sue me in the Court of Federal Claims. You go to Federal Claims, and now, suddenly, you say we don't belong here. I'm not a party to this contract. Well, Your Honor, the trial court explained that it didn't believe that the government's position was clearly inconsistent in the Court of Federal Claims with its position in the district court. HUD had relied in the district court on the allegations of – Was it inconsistent with what you did in Senate manner? In Senate manner, the government had recognized that the contract was not between HUD and Senate manner. And that is why when the case came to the Federal Circuit, it pointed out that jurisdictional problem with the transfer to the Court of Federal Claims. And having seen the court's decision upholding that position – In Senate manner, isn't it the case that you argued that you were a party to the contract? That was only below in the district court, I believe. But in this case, the government – The government argued that it was a party to the contract. Is that correct? I believe that the government might have relied on the background assumptions in the complaint filed by Senate manner. It's a yes or no question. Did you argue and assert in Senate manner that the government was a party to the contract? I believe in the district court litigation, the government believed that it was a party to the contract. However, in this case, in Normandy, as the trial court noted, the government's position was not clearly inconsistent in the district court. HUD relied upon the complaint's allegations. The complaint stated that Normandy and HUD had a contract. Ms. Tannen, let me ask you something. I wasn't going to ask the same question that Judge Newman asked. One of the things that disturbs me is what I have raised with your opposing counsel, and that's the question of the windows. And it disturbs me because, A, it looks like the apartment owner was acting in good faith from the record that they were trying to improve the premises and that the windows, which they were trying to improve, were a major factor in their failing score. And what bothers me is it looks like they did indeed fix them and couldn't get a reinspection done to demonstrate that they were fixed. Am I incorrect in reading the record that way? Your Honor, the issue of whether a reinspection was required, well, number one, inspection timing and notice regulations, it's noted that HUD need not follow those requirements when it feels it must take any action to protect the residents. It's in 24 CFR 20857I4. It's not any sort of requirement on HUD to allow a further reinspection. HUD had asked Normandy to certify that it was in compliance with inspection requirements, and it stated that it could not. As Normandy's counsel pointed out, there were many other problems outside of the windows. The inspection report, which is at Appendix 819, notes insect infestation. It notes health and safety problems such as missing smoke detectors, inability to access windows as a means of providing access from an apartment. So there are many problems that have led to a failing score, which in the record is noted to have occurred several times over the course of 1999 through 2000 and through the time here. And I wanted to reach the court's question about third-party beneficiaries. The court found in Cassavetes Narrows, which is at 16F3-1204 at 1210, that the tenants would be considered third-party beneficiaries if there were any, if there had been any agreement. And as Normandy's counsel pointed out, not a property owner. And similarly, those cases of New Era and Housing Corporation of America, Cassavetes Narrows, they all point out that this two-tiered system where HUD has supervision and inspection responsibilities and PHAs such as OFA make cap payments is accepted. And that, for example, the renewal, the fact that this is a renewal contract, the court in the Senate Manor decision, which was unpublished, considered the same contract term. Let's go back to the case you were citing with respect to third-party beneficiaries. It's not just the tenants that are the third-party beneficiaries, correct? I mean, it's not limited to just tenants. That's what the court in Cass found. Were they looking at a PHA agreement at that time? I believe the court was considering whether there could be privy of contract between HUD and a property owner when a PHA was the party that entered into the contract. So it's your view that there's no way that Normandy can get its money? Yes, Your Honor. First of all, Normandy has no contract rights under the HAP contract because the government is not in privity. HUD has no direct and unavoidable liability under the HAP contract that would be necessary. What about your opponent's argument that HUD's policy manual claims that it's a party? Well, the policy manual should not be considered. It's extrinsic evidence. It's unnecessary for interpretation of the HAP contract because the contract is clear as to who the parties are. Normandy has alleged no ambiguity in the contract, and there is none. The guidebook is from February 2008. It postdates this contract by not quite four years. It would not be incorporated into the HAP contract, and its guidance isn't relevant to an interpretation. Similarly, the affidavit… Would it be relevant to a third-party beneficiary claim? No, Your Honor. Again, there is no liability under that HAP contract that could be found from the terms of the contract. And to move on to the question of the use agreement and the alleged implied-in-effect contract, again, the court below did not abuse its discretion in finding that the plaintiff couldn't amend its complaint to add those claims, which were never alleged in any complaint. The claim that the use agreement incorporated the HAP contract, there's no language of incorporation that would bring in the HAP contract. Furthermore, the implied-in-effect contract that Normandy has alleged relates to the guidebook statements by Mr. Ransom. Mr. Ransom didn't have authority to bind the government, and the plaintiff hasn't alleged that he did, and his affidavit came long after the HAP contract here and after the breaches. To turn to the takings claim, Normandy has not demonstrated a property interest, which is the first step in the review of a takings claim. Contrary to Normandy's assertions, the trial court did not need to reach the Penn Central factors. Normandy voluntarily relinquished the very rights that claims were later taken. Normandy is complaining that after receiving the benefits of its agreement with HUD through the use agreement, that HUD is holding Normandy to its side of the bargain, which is continuing to house low-income tenants that these bargain-for terms are less appealing. It does not mean that HUD cannot enforce Normandy's obligations. In this case, HUD took the actions that it took because they were necessary to protect tenants from conditions that weren't decent, safe, and sanitary. As for Normandy's restitution claim, again, that was not argued in a complaint. Normandy provided no statutory authority for restitution or a money-mandating source in law that it identified at the Court of Federal Claims. It's pointing to certain statutes, including 42 U.S.C. 1437 and 24 CFR 982, that don't include any requirement of payment. They're simply declarations of policy and statements of general information about the Section 8 program. And if the Court has no further questions, we ask that the Court affirm the decision of the trial court that Normandy was not in privity with the United States and also that Normandy cannot demonstrate a takings claim. Thank you. Mr. McKeevy? With respect to Senate Manor, as we cited in our briefs, the non-presidential nature of that decision simply wasn't a factual record to see what the analysis was of the Court. We also think that to the extent that the property owner in Senate Manor was arguing that HUD had violated certain covenants and the half agreements to which it was a party, then we think the analysis in Senate Manor is wrong, respectfully. A couple of things that the re-inspection, in the appendix, there's some, again, guidance from HUD, and this is found at 698, and it talks about the under 60 score on a REAC score disposition and enforcement. And the second paragraph, it says, if the result of the second inspection indicates continued physical condition problems, I think that there is a requirement under both the regulations and contractually that the second inspection be granted for a failing score. The ransom, clearly, as the director of the HUD facility for Kansas City, had the power to bound the government. The signatory to the previous HUD contracts were the Oklahoma, had liaison who reported to Mr. Ransom. So I don't think it's fair to say that Mr. Ransom cannot bound the government. But I think his affidavit, and it came at the time that we were alleging the breach, or months after, it was during the time, it was after the contract was executed. But I think, again, it goes to show the mutual intent and understanding of the parties as it relates to that 2004 half renewal. So we think that the affidavit is relevant, one, to show the intent of the parties, two, to show that he, as the HUD director overseeing this property, understood there to be a contractual approval relationship between HUD and Normandy. Addressing the property interest argument on the takings claim, while HUD gave up certain rights, one of which is to charge market rents, it didn't give up all of its rights. And the contracts that it voluntarily entered into said that a certain contract rent would be received, that a certain rent would be received from the tenant, and then a certain rent from a half subsidy, so long as Congress appropriated the funds. And it understood that such subsidies could be abated, but it would be abated after a certain process was adhered to. According to the regulations, according to the contractual provisions of previous half agreements. So while Normandy concedes that it gave up the simple rights, it does not agree that it gave up all of its rights, particularly as it relates to those contracts. So we think that the court should have gone into a pen-central factors analysis because we felt that there was adequate property interest there to protect. Is Normandy prevented from going back? Do you have a statute of limitations, problems in going back and seeking a third-party beneficiary complaint or a detrimental reliance type theory? It would be a six-year statute. And so going back to that, I think we're out of the statute. But I think that the court could find, you know, the opposing counsel mentioned pleadings, and I disagree somewhat with the argument that you have to plead exactly your theories of recovery in a complaint. You have to plead the facts. I think this report came out recently and said that your legal theory doesn't have to be right, just as long as you establish the facts that put the defendant on notice that there's a claim against the defendant. And so I still think we have grounds on remand to assert that in the court of claims. The second thing, too, addressing restitution is that the money-mandating source would be the same money-mandating statute that authorized the HAP payments. And if you – in the record, there is an addendum to a HAP contract at 120 in the appendix. And it says, contract language allowing for use of abated Section 8 payments to be used to cover relocating and relocation costs. And that addresses that if HUD does abate the Section 8 payments, the HAP payments, that it can use those funds to relocate the tenants. In this case, it didn't relocate the tenants. It took a while to relocate or switch to vouchers. And that's part of the record that we established is that out of 118,000, 119,000 approximately we were due the month of November, the first month of abatement, we received about $24,000 in rents. So the same source of funds for the HAP payments would be the source for any restitutionary payment because the tenants were still residing. And HUD had sent a letter saying you cannot raise the rent, the tenant portion of the rent, even though we're not paying you or we're not subsidizing the rent. So I think that there are grounds that there is a money-mandating statute to fund the restitution. Thank you. Thank you both. The case is taken under submission.